JESSE CROUSE et al., Appellees, v. ELIZABETH CROUSE, Appellant.

No. 40930.

JANUARY 12, 1932.

REHEARING DENIED JUNE 24, 1932.

O. M. Brockett and John A. Hull, for appellees.

Baker, Doran & Boone, for appellant.

WAGNER, C. J.—This is an action of right in which the plaintiffs ask for the possession of approximately 500 acres of land which was owned by John A. Crouse, who died intestate March 4th, 1927. The plaintiffs, eight in number, are the children and sole heirs of said deceased, and the defendant is his surviving widow.

John A. Crouse had been a widower for a number of years prior to his marriage to the defendant on December 8th, 1926. It is the claim of the plaintiffs that the death of their father was the result of acts on the part of the defendant-widow which constitute involuntary manslaughter. It appears that on the day of his death, the decedent had on deposit in the City Trust & Savings Bank of Boone the sum of $3500.00, and that he was indebted to a relative in California in the sum of $4000.00. The defendant and the decedent appeared at the bank, where discussion arose as to the best and safest way—whether by draft or postal money order—to make remittance of said $3500.00 to his creditor. The defendant took the attitude that the better course to pursue was to send the remittance by postal money order. Mr. Rice, an officer of the bank, paid Mr. Crouse, at

that time, the $3500.00 in seven packages of $500.00 each, telling him: "If you conclude you want a draft, come back and I will make you out a draft." Mr. Rice, as a witness for the plaintiffs, testified that he did not detect anything at that time which indicated any anger or ill feeling between the defendant and her husband. They left the City Trust & Savings Bank at approximately the noon hour. The automobile, which was owned by the deceased, was parked on the opposite side of the street, west of the bank. The defendant drove the automobile and the deceased was seated by her side. She drove the car to the first corner south, and then turned west upon 8th Street in the direction of their home, which is located in or near the northwest portion of the city. The post office is located on the north side of 8th Street, approximately two blocks west of the City Trust & Savings Bank. The accident occurred a short distance west of the post office. There were workmen engaged in making repairs upon a tenant house upon the Crouse farm, who were expected to get their noonday meal at the Crouse home. There is testimony that the defendant proceeded down 8th Street at a rate of speed of thirty-five miles per hour, and that the car did some swerving or zigzagging prior to the time of the accident. There is no evidence of any speed ordinance. The evidence tends to show that Crouse suddenly appeared upon the running board of the car and fell therefrom upon the pavement, receiving a fractured skull, which caused his death the same day. Because of the provisions of Section 11257, Code, 1927, the defendant was not permitted by the court to relate all that transpired between her and her husband after leaving the bank and prior to the time of the accident. We need not, and do not, determine whether the court was in error in sustaining the objections to this offered testimony. The defendant was arrested the same day and quizzed by the officers. The sheriff gave in testimony a portion of the conversation between them, and because thereof, she was permitted to give the remainder of the conversation, which it may be said fairly gave her version of the transaction. She testified as follows:

"I told them [the officers] we [the defendant and her husband] came into the bank and Mr. Crouse talked with Mr. Rice and told him that he wanted to draw out the money that he had

to pay a niece that he owed in California. We went there to draw out the money to pay this note that Mr. Crouse wanted paid. Mr. Crouse asked Mr. Rice which would be the best way to send it. I don't remember the exact words. I suggested getting post-office money orders. Mr. Rice wrote out the check. I told them [the officers] that Mr. Crouse got the money and that when we came out of the bank it was five minutes to twelve and that Mr. Crouse said we would go home, so we walked across the street in front of Mann's furniture store, where we had our car parked. Then they asked me what we did, and I said we drove south on Story Street till we came to Eighth Street; then we drove west on Eighth Street. Mr. Boone or Mr. Hanson [the officers] asked me what John said after he spoke about going home on account of it being nearly twelve. Mr. Crouse said we would go home and have our lunch and would come back, and when we returned in the afternoon we would get the post-office money orders and send the money out that we had got at the bank. Then they asked me what we did after we got in the car. I said we drove south on Story Street till we came to Eighth Street, then we went west on Eighth Street, and just a little west of Greene Street Mr. Crouse said, 'I am going to get out and get those post-office money orders now.' And I said, 'No, wait until after lunch,' and then Mr. Crouse swore, and said that he was going to get out right then; and I saw that he was going to get out of the car, and I asked him if he would wait till I stopped, till I could stop the car; and he got out on the running board some way. I told them [the officers] I asked Mr. Crouse if he could wait until I could stop the car, when I saw he was going to get out. Mr. Boone asked me why I didn't stop the car, and I said I started to put my foot on the brake, and it slipped on the accelerator, and then it all happened so quick, I didn't know how anything—I couldn't tell anything more, and I didn't know what happened. I told them then I could see he was going to get out,—I took hold of his hand to have him stay in the car until I could get it stopped,—and that I tried to stop the car and that I got my foot on the accelerator instead of the brake, and that when I did get my car stopped it was too late. I told them I thought Mr. Crouse pulled loose from my hand, and that I stopped the car as quickly as I could. * * * They asked me if I knew after we had gotten onto

Eighth Street away from Story Street that Mr. Crouse wanted out. I told them 'No, sir.' They asked me if I knew that Mr. Crouse wanted to get out at the post office. I told them I didn't know he wanted to get out until after we had passed west of Greene Street.''

The aforesaid testimony given by the defendant is not denied.

Mr. Meyers, the only eyewitness who was in position to see the occurrence, testified as a witness for the plaintiffs:

''I said he suddenly went off the running board. It looked to me like he might have stepped off and was suddenly thrown off. It looked to me like he just went off. I didn't say he was pushed off. It didn't look like he was pushed off. I did answer at the other trials the question: 'Did he fall off the car as though someone pushed him off? A. Well, he just dropped off. It looked like he might have stepped off and was suddenly thrown off, but it didn't look like he was pushed.' ''

As stated by the appellees in their argument: ''The evidence tends to show that he [the decedent] was a man who made quick decisions, with whom to think was to act.''

To set out the testimony *in extenso* would unduly extend the length of this opinion. It is sufficient to say that we have read the record with care, and there is no evidence from which the jury could properly find that the defendant at the time in question had any intent, purpose or design to kill, or even injure, her husband. The plaintiff-children base their right to the recovery of the possession of the property upon the alleged claim that the defendant-widow feloniously took the life of her husband, alleging, in substance, that she is guilty of manslaughter by reason of her gross negligence in that, having knowledge that the decedent was upon the running board of the automobile and in a place of danger, she omitted and failed to stop the automobile to avert a threatened injury to him; in that, having knowledge that the decedent was in a perilous position upon the running board of the automobile, and although she knew of the danger of an injury to him if the automobile was not stopped, she failed so to do, although she had means to stop the same, and instead accelerated the speed of said auto-

mobile and drove the same at an excessive rate of speed and in a zigzag and irregular manner, causing him to fall or to be thrown therefrom; and in that she drove the automobile at an excessive rate of speed and in a zigzag and irregular manner at the time and place and under the circumstances in question, with utter indifference to the life and safety of the decedent. They further allege in their petition that the said reckless acts were the proximate cause of the death of the decedent, "and that she thereby feloniously caused his death."

The plaintiff-children base their right to recovery upon Section 12032, Code, 1927, which provides:

"No person who feloniously takes or causes or procures another so to take the life of another shall inherit from such person, or receive any interest in the estate of the decedent as surviving spouse, or take by devise or legacy from him, any portion of his estate."

Sections 12033 and 12034 were enacted at the same time as the original enactment of Section 12032, and at that time all of said three sections comprised only one section. See Section 3386, Code, 1897. It is provided by Section 12033, Code, 1927, that:

"No beneficiary of any policy of insurance or certificate of membership issued by any benevolent association or organization, payable upon the death or disability of any person, who in like manner [that is, feloniously,] takes or causes or procures to be taken the life upon which such policy or certificate is issued, or who causes or procures a disability of such person, shall take the proceeds of such policy or certificate."

It is the claim of the plaintiff-children that the defendant-widow feloniously took the life of her husband within the meaning of the aforesaid statutory law. There is neither evidence nor claim that she is guilty of murder or of voluntary manslaughter; but it is the contention of the plaintiff-children that one "feloniously takes" the life of another, within the meaning of the aforesaid statute, by the commission of involuntary manslaughter. We find it unnecessary to determine that question, because, from a careful reading of the record, we are abidingly satisfied that there is not sufficient evidence of recklessness or reckless

conduct upon the part of the defendant-widow in the management or operation of the car from which the jury could properly find, even under the preponderance of evidence rule applicable to civil actions, that she is guilty of involuntary manslaughter.

At the close of plaintiff's evidence, the defendant moved for a directed verdict, and the motion was renewed at the close of all of the evidence. On each occasion, the motion was overruled, and the appellant assigns said rulings as error. The court was in error in not sustaining appellant's motion for a directed verdict.

Many other propositions are urged by the appellant as grounds for reversal, but because of our conclusion on the matters hereinbefore considered, it is unnecessary to consider other propositions urged by the appellant. The judgment of the trial court must be, and the same is hereby, reversed.

Appellees' objections to the jurisdiction of this court to entertain the appeal, their motion to dismiss the same, and their motion to strike appellant's second amendment to the abstract, all of which were ordered submitted with the case, have had our consideration, and they are without merit, and the same are hereby overruled.—Reversed.

All justices concur.