JESSE CROUSE et al., Appellants, v. ELIZABETH CROUSE, Appellee.

No. 42192.

MARCH 13, 1934.

John A. Hull, for appellants.

D. G. Baker and L. H. Doran, for appellee.

MITCHELL, J.—The appellants, who are the children of John A. Crouse, deceased, commenced an action in equity to quiet title to a one-third interest in 500 acres of land in Boone county, Iowa, claiming in their petition that the appellee, the surviving spouse of John A. Crouse, feloniously caused the death of John A. Crouse and by reason thereof the appellee took no interest in the property of the estate under Code, section 12032. The appellants claim that their father, John A. Crouse, came to his death because of the unlawful acts and willful negligence of appellee in the operation of an automobile driven by appellee, upon the running board of which John A. Crouse was standing in a perilous position, from which peril the appellee had the means of protecting him by the exercise of ordinary care, and that she willfully omitted to do so, and that at the time in question the appellee was engaged in an unlawful act in transporting the said John A. Crouse against his will, with the purpose of securing $3,500 in currency which he then had in his possession. The lower court denied the relief prayed for by the appellants, and from said order and decree appeal has been taken to this court.

This case has had a very long and notable career. John A. Crouse fell from the running board of an automobile on March 4, 1927, and died a few hours thereafter. Within a few days after that the appellants in this action commenced an action in partition, asking that the title to the real estate left by said deceased be quieted in them and that a decree of partition be entered, which said action in equity was later dismissed. See Crouse v. Crouse, 210 Iowa 508, 229 N. W. 850. After the dismissal of the equity action above mentioned, the appellants immediately filed their petition at law, claiming the immediate possession of said real estate so left by said deceased, claiming that appellee was guilty of manslaughter in causing the death of said deceased, and by reason thereof she took no interest in his said estate. In this law action there were three trials

to a jury. In the first two the jury disagreed; in the last the jury found for the appellants, which said cause was upon appeal reversed by the Supreme Court in an opinion reported in 214 Iowa 725, 240 N. W. 213. Following the decision of the Supreme Court, which reversed the action of the lower court on the grounds of insufficiency of the evidence, the appellants herein filed their substituted petition in equity, praying that the appellee be adjudged guilty of having feloniously caused the death of the said John A. Crouse, stating that she therefore took no rights or interest in or to any part of his estate; that the title to the real estate left by the deceased be quieted in the appellants; that a writ issue placing them in possession of the real estate; and asking for an accounting from the appellee by reason of her having occupied the homestead so occupied by her and her husband at the time of his death. The appellants moved to transfer the cause to the equity side of the calendar. The appellee filed a written resistance. The lower court sustained the appellants' motion to transfer to the equity side of the calendar, and the cause was tried as an equitable action. Shortly after the death of John A. Crouse the appellee herein was indicted by the grand jury of Boone county, Iowa, charged with the crime of manslaughter, growing out of the death of her husband, in that she willfully, unlawfully, and feloniously drove a motor vehicle with gross negligence and recklessness so as to cause the death of her husband. She was arrested pursuant to said indictment, pleaded not guilty to the crime charged, and was upon trial to a jury under said indictment duly acquitted of the charge of manslaughter by direction of the court to return a verdict of acquittal, which verdict of acquittal was returned and judgment entered accordingly, acquitting, releasing, and discharging the appellee.

John A. Crouse at the time of the accident was approaching his sixty-fourth birthday. He had married young. His first wife died in 1908. They had eight children, the appellants. During the eighteen years he was a widower he kept his children together on the farm. As they grew up, they married and left home, establishing their own homes. Only Ella, the youngest, was left at home. She lived with her father in a large house on the 500 acres of land owned by him close to the city of Boone, the title to one-third of which is involved in this action. The record shows that John A. Crouse was a substantial, hard-working, honest man, who had raised a large family and educated them. The appellee, Elizabeth Crouse,

spent her early years on a farm in Boone county. Reaching about the fifth grade in country school, she was taken out to help her mother at home. At 17 she came to town to work. She soon married a man by the name of Woodward. This romance ended in a few days, when her brother found that Woodward had a wife and children. The marriage was annulled. Shortly thereafter she married a man by the name of Peterson. By him she had a son. This marriage lasted but a short time, and she was divorced. She then married a man by the name of Lyons. They moved onto a farm, and, as in the former cases, soon there was a separation and divorce. In the latter part of August, 1926, appellee applied for and was given a position as housekeeper in the Crouse home at a weekly wage. In about three months, to wit, on December 8, 1926, Crouse and the appellee were married. Crouse, as a husband, was very indulgent. Soon after the marriage he purchased a grand piano. Draperies and rugs adorned their home. A maid answered the doorbell. The day before the wedding he bought her an expensive grey squirrel coat, and in February, 1927, he bought her a Buick sedan.

On February 26, 1927, Crouse deposited $3,500 in a checking account in the City Trust & Savings Bank. Mrs. Crouse had always had the right to check upon his bank account, but on the evening of March 3d Crouse telephoned to an official of the bank not to honor any checks drawn on his account except his own. On the morning of March 4th Mrs. Crouse came to the bank and asked to withdraw the money which Crouse had deposited there, to wit, the sum of $3,500. The official at the bank informed her that Crouse had given the bank instructions not to permit any one to withdraw the money. She said she would get Crouse and bring him to the bank. Shortly thereafter they both came to the bank. Crouse stated to the official who waited upon them that he wanted to send the money to a relative in California, and there was some dispute then at the bank as to whether Crouse should take a draft, a cashier's check, or the money. Mrs. Crouse insisted that he should take the amount in currency and secure post office money orders to send the money to the relative in California. There also appears in the record evidence of some dispute which had taken place between Crouse and his wife on the evening before and the morning of the accident. However, the evidence does not show this to be of a serious nature. Crouse took the money in $20 bills, walked across the street to where they had parked the Franklin car. The Franklin car was

Crouse's car, and, being an open car and as the day was rather breezy the side curtains were on. Mrs. Crouse sat on the left-hand side of the front seat, in the driver's position. The exact position that Crouse was in at the time the car started on the fatal journey is somewhat in dispute, and will be referred to later in this opinion. The evidence shows that Mrs. Crouse turned to the west at the corner and proceeded to drive the old Franklin car, according to the various witnesses, from twenty to thirty-five miles an hour; that the car swerved and zigzagged as it proceeded west. Behind the Crouse car was a car driven by a witness by the name of Curtis. He testified that when he first saw the Crouse car he did not see any one standing on the right running board. When the car was in front of the post office Crouse fell or stepped off, striking the pavement and fracturing his skull, from the effects of which he died a few hours later. There is no evidence in the record to show that Mrs. Crouse pushed him off the running board. Mrs. Crouse drove the car a short distance ahead, stopped, and came back to the scene of the accident. She immediately grabbed the money which Crouse had in his hands, to wit, the $3,500 which he had secured at the bank, made one or two short remarks to some of the people standing there, and then got into the Franklin car and drove home, where she put the money, part of it, under a carpet and part of it under the mattress on the bed. She stayed at the home for some time and did not go to the hospital, where Crouse was taken by others, until she was notified of the serious condition of her husband, that afternoon. She stayed but a short time at the hospital. It is needless to say that the record shows Mrs. Crouse did not act as a loving and dutiful wife should, for, instead of staying with her husband to assist him and do what she might to help him in his suffering, she seemed more interested in securing the money and rushing it to what she believed was a safe place, namely, under the carpet in her own home.

It is conceded by the appellants that the opinion of the Supreme Court upon the former appeal, to wit, the opinion in 214 Iowa 725, 240 N. W. 213, must be regarded as the law of this case so far as the facts are identical upon the two appeals. The record made by the appellants is the transcript of the evidence offered in the former case, which was decided by this court, with the exception of two additional witnesses and the exception that the speed ordinance of the city of Boone was introduced in this case.

So we must look to the evidence of the two witnesses to see

whether or not there is in this record now sufficient additional testimony to take it beyond the decision of the Supreme Court reported in 214 Iowa 725, 240 N. W. 213.

One of the two new witnesses introduced by the appellants was a Mrs. Nellie Brown, a lady along in years, who was well acquainted with both John and Elizabeth Crouse. On the day of the accident she passed John and Elizabeth Crouse on the street after they had left the bank and before they entered their car. She testified that she heard John Crouse say to the appellee: "I will stop at the post office and leave that money." She looked as they started from where the car was parked, and Elizabeth Crouse, the appellee, was driving and John Crouse was standing on the right running board, hanging onto the side of the Franklin car. She watched the car as it turned the corner and started west. She said she watched the car as it traveled west, as far as Keeler street, and that all of this time John Crouse was standing on the right running board, and that he was just holding on to the top of the door.

The other new witness that was offered was Margaret Covi, who was in front of the hotel, walking in the direction of the post office at the time the Crouse car passed the hotel. And at that time she testified there was a man standing on the running board. She watched the car until the man fell off.

Thus we see the evidence offered by the new witnesses does not introduce any new theory in the case, but is in the nature of cumulative evidence upon one of the theories that was urged at all times in the various trials of this case. The most that can possibly be said for the new evidence is that it puts John Crouse on the running board of the car for a greater distance than the other evidence did. Upon this there is a dispute in the evidence, for certain witnesses who were driving behind the Crouse car testified that they did not see anybody on the running board at the time they saw the Crouse car, which was after the time that Mrs. Brown had seen the Crouse car. The new evidence, together with the transcript evidence that was introduced by the appellants, is not of such a character that this court can find there was sufficient evidence of recklessness or reckless conduct on the part of the appellee as to show that she was guilty of manslaughter. The able and learned trial court had before him the witnesses and had the opportunity to observe their demeanor upon the witness stand and their manner of testifying, and no good

reason now appears why the finding of the lower court should be disturbed.

Many other interesting questions are raised by the appellee, but, in view of our holding as announced in this opinion, it follows, therefore, that the judgment and decree of the lower court must be and it is hereby affirmed.

CLAUSSEN, C. J., and EVANS, KINDIG, STEVENS, ANDERSON, DONEGAN, KINTZINGER, and ALBERT, JJ., concur.