# MAGGIE SCHREINER, FOR USE, ETC.,

## v.

# THE HIGH COURT OF ILLINOIS CATHOLIC ORDER OF FORESTERS.

*Life Insurance—Killing of Assured by Beneficiary—Endowment Certificate—Conditions—Pleading.*

1. A contract of insurance impliedly assumes the risk of all carelessness by every person, whether a possible beneficiary under the contract or not, from which the death of the assured may result, unless such acts of carelessness are especially excepted; and a death which is unintentional, though caused by some neglect or unlawful act of the beneficiary, is within the contract and should not defeat the policy.

2. There can be no recovery in an action founded upon an intentional wrong. The beneficiary in an insurance policy can not recover where the death of assured has been intentionally caused by his act.

3. It is not necessary to show in a given case that the purpose of the beneficiary in murdering the assured was to obtain the amount at risk; it is enough if the killing was the intentional and wrongful act of the beneficiary named in the policy.

4. It is not necessary to find in the policy an exception in terms against the intentional killing of the assured by the beneficiary. Such exception is implied by law.

5. In an action brought to recover upon an endowment certificate of a mutual benefit association, this court holds, that the plea setting up the record of the Criminal Court, showing the indictment of the beneficiary therein for the murder of assured, her plea of guilt of manslaughter, and sentence to the penitentiary, constituted no defense to said action, and that judgment for the defendant can not stand.

[Opinion filed April 21, 1890.]

IN ERROR to the Superior Court of Cook County; the Hon. JOHN P. ALTGELD, Judge, presiding.

Mr. ALBION CATE, for plaintiff in error.

The liability has become fixed. The mere fact that the holder of the note causes the death is not a valid defense. Defendant has given its bond to Matthew Schreiner to pay

plaintiff.   The consideration is a good one.   It is not against good morals or public policy.   Had any other person than plaintiff been the appointee, the question could not have arisen.

The distinction between defendant's contention and the case at bar is clear.   The contracting for *future* illicit intercourse would be a case within the maxim and rule invoked.   Past illicit intercourse would be a good consideration.   So an agreement to engage in smuggling, or to deal in differences on the stock or produce exchange are illustrations of *ex turpi causa oritur nulla actio inter partes*, as are also Liness v. Hesing, 44 Ill. 113; Tenny v. Foote, 95 Ill. 99; Arter v. Byington, 44 Ill. 468; Henderson v. Palmer, 71 Ill. 579; Parsons v. Ely, 45 Ill. 232; Skeels v. Phillips, 54 Ill. 309; Neustadt v. Hall, 58 Ill. 172; Jerome v. Bigelow, 66 Ill. 452; Gillett v. Logan Co., 67 Ill. 256; Hamilton v. Hamilton, 89 Ill. 349; Pearson v. Lee, 1 Scam. 193; Nash v. Monheimer, 20 Ill. 215; Loyd v. Malone, 23 Ill. 43; Ambrose v. Root, 11 Ill. 497; Ferguson v. Sutphen, 3 Gilm. 547.

Nor can an insurance company avoid its contract by setting up an infraction of the "Ten Commandments," the "Illinois Criminal Code," or a violation of the precepts of the "Sermon on the Mount."   P. Ins. Co. v. Mitchell, 67 Ill. 43.

Mr. FRANCIS T. COLBY, for defendant in error.

An insurance company assumes certain risks in issuing a policy, but it is always implied that it does not assume the risk of the wilful act of the payee to bring about the event insured against.   So the insured can not recover for loss by fire caused by his arson.   Scott v. Home, 1 Dillon (C. Ct. U. S.), 105; McConnell v. Delaware Ins. Co., 18 Ill. 228; Howell v. Hartford, etc., Ins. Co., 3 Ins. L. J. 653; Sibley v. St. Paul Ins. Co., 8 Ins. L. J. 461; Franklin Ins. Co. v. Humphreys, 65 Ind. 549.

The contract of life insurance is with the payee (Glanz v. Gloeckler, 104 Ill. 573); so if the life upon which the policy is granted be taken by the person who would otherwise receive the insurance money, insurers are discharged, and the money

can not be recovered of them.   Porter on Insurance, p. *131; Prince of Wales Ins. Co. v. Palmer, 25 Beav. 605; New York Mut. Life Ins. Co. v. Armstrong, 117 U. S. Rep. 591 (reversing 20 Blatch. (U. S.), 493).

It has been held that the insurer may take a risk of death by any cause other than by sentence of law, self-destruction in a sane mind, or in consequence of some criminal violation of law.   If death ensue from any of these causes the insurer is not liable, since it is contrary to the policy of the law, in such case, to allow the insurance money to be recovered.   Porter on Insurance, *p. 129; Hatch, Adm'r, etc., v. Mutual Life Ins. Co., 120 Mass. 550; Amicable Soc., etc., v. Bolland, 4 Bligh, N. S., 194; Horn v. Anglo-Australian, etc., L. J. 511, Ch.

It is contrary to public policy to permit a person who wilfully kills another to enforce through the courts the contract for the payment of insurance upon the life of the person killed.   New York Mut. Life Ins. Co. v. Armstrong, 117 U. S. Rep. 591; Riggs v. Palmer (N. Y. Ct. of Appeals, Oct. 8, 1889), 22 N. E. Rep. 188; Greenhood on Public Policy, part I, rule II.

No action could arise except by the death of Matthew Schreiner.   That was brought about by a crime.   The criminal ought not to be assisted by the courts to reap a reward from her crime.   The maxim " *ex maleficio non oritur contractus*," applies.   Broom's Legal Maxims, 706.

MORAN, J.   The declaration in this case counts upon an endowment certificate issued to one Matthew Schreiner by the High Court of Illinois Catholic Order of Foresters, in and by which, on condition that said member (Matthew Schreiner) complies with the laws, rules and regulations governing the said order, said High Court promises to pay to his wife, Maggie Schreiner, $1,000, upon satisfactory evidence of the death of said member, provided that said member is in good standing in the order at the time of his death, "and provided also that this certificate shall not have been surrendered by said member and another certificate issued at his request, in accordance with the laws of this order."

The certificate is shown to be duly assigned to the beneficial plaintiff, John C. King.

To the declaration defendant filed pleas, to some of which plaintiff demurred, which demurrers the court overruled, and plaintiff electing to stand by the demurrers, the defendant withdrew all other pleas, and there was judgment for defendant on the pleas demurred to. These pleas are four in number. The first alleges, as the ground of defense, that said Maggie Schreiner did "feloniously kill the said Matthew Schreiner;" the second avers that no cause of action could arise upon said certificates except by reason of the death of said Matthew Schreiner, and that "said death of said Matthew Schreiner was caused by the felonious act of the said Maggie Schreiner," etc., and the third is like the second, except it alleges that the death of Matthew "was caused solely by the wilful act of the said Maggie Schreiner," and that said wilful act in causing the death of the said Matthew Schreiner was at the time of the commission thereof contrary to the statute of the State of Illinois. The fourth plea sets up the record of the Criminal Court of Cook County, showing the indictment of one Lena Schreiner for the murder of said Mathias Schreiner, her plea of guilty of manslaughter, and her sentence to ten years in the penitentiary, and alleges that the Maggie Schreiner named in the benefit certificate is the same person as the Lena Schreiner mentioned in the indictment and judgment, and that the Mathias Schreiner mentioned in the certificate is the Matthew Schreiner mentioned in the indictment; and avers that said judgment of the Criminal Court is still in full force, and prays judgment, etc.

This fourth plea may be very readily disposed of. Indeed, it is somewhat difficult to surmise on what theory it is supposed to set up matter in bar of the action. The record is merely evidence of the conviction, but is no evidence of anything that is to be inferred or argued from it. It constitutes no estoppel except between the people and the person convicted, and is not evidence when the question arises collaterally even of the fact of Mathias Schreiner's death, much less of the fact of who killed him. Her plea admitting guilt of

manslaughter is like any other admission of the kind, not con-
clusive, but subject to contradiction or explanation, when
proved against her in any civil proceeding, and in such a pro-
ceeding the record is not evidence in favor of a party adverse
to her, that she did so plead guilty. The plea constituted no
defense whatever to the action. Duchess of Kingston's case
and notes thereto, 2 Smith's L. C. 609.

The other pleas do not, in our opinion, set up such a killing
as should in law bar plaintiff from a recovery. The allega-
tions that the death was caused solely by the wilful act and
by the felonious act of said Maggie Schreiner, and that she
did feloniously kill said Mathias Schreiner, would all be sup-
ported by proof of facts which would constitute the crime of
involuntary manslaughter under our statute.

"Involuntary manslaughter shall consist in the killing of a
human being without any intent to do so, in the commission
of an unlawful act, or a lawful act, which probably might pro-
duce such a consequence, in an unlawful manner." Crim.
Code, Sec. 145.

Such an involuntary killing might be punishable, and it
would therefore be felonious, and it might also be the result
of a felonious act, or of a wilful act. No homicide which is
the result of carelessness, or which is not an intentional kill-
ing, should bar plaintiff's rights to the money on her certifi-
cate.

A contract of insurance or a certificate like the one in suit,
impliedly assumes the risk of all carelessness by every person,
whether a possible beneficiary under the contract or not, from
which the death of the insured may result, unless such acts
of carelessness are especially excepted; therefore a death
which is unintentional, though caused by some neglect or
unlawful act of the beneficiary, is within the contract, and
ought not to defeat the policy. But it would be unjust and
unreasonable to hold that the intentional taking of the life of
insured, by the person who is to receive the insurance on the
death, is a risk assumed and insured against by the company
or the society which issues the policy or certificate.

The law enters into, and becomes a part of every contract,

and furnishes the rule for its proper construction. Public policy is a law with reference to which all contracts must be made and interpreted, and public policy forbids that contracts shall receive such an interpretation as will encourage crime or make their performance a reward thereof. Wager policies were held void at common law because of the obvious temptation presented by such policies to the commission of crime. Quite as clear, and it would seem a more imperative policy, requires the rule to be that a beneficiary in a life policy can not recover, when the event by which he is to benefit, to wit, the death of the insured, has been intentionally accomplished by his own act. To hold otherwise would be to furnish to the party interested the strongest temptation to bring about, if possible, the event insured against. It is wholly unnecessary to find in the policy or the certificate an exception in terms against the intentional killing of the insured by the beneficiary. Such an exception is introduced into the contract by the law, which, by civil power and coercion, seeks to enforce the divine command, "Thou shalt not kill."

No court will lend its aid to one who founds his cause of action on his intentional wrong. If this contract read in terms that the High Court would pay the money to plaintiff on the death of Schreiner, whether he should die from natural causes, or by the hands of plaintiff, all would agree that it would be void as against public policy. Is it not plain that the same policy which would render it void if expressed in terms, forbids an interpretation of its obligations, which would give to the contract the same injurious and immoral operation. The question sought to be raised by the pleas in this case, but which as we have seen they fail to present, is new, and we have found no case exactly in point. It was held by the Supreme Court of the United States in Insurance Company v. Amstrong, 117 U. S. 599, that a person who procured a policy upon the life of another, payable at his death, and then murdered the assured to make the policy payable, could not recover thereon. It would, indeed, as was there said, " be a reproach to the jurisprudence of the country," if this were not so. We do not think, however, that it is neces-

sary to show that the *purpose* of the killing was in order to get the money. It is enough that the killing was the intentional and wrongful act of the beneficiary named in the policy.

Then, as a fair interpretation of the contract, the death is occasioned by a cause which exempts the insurer from liability. This avoids the view that the beneficiary is denied the right to recover as an additional punishment to that prescribed by law for the offense. There is no attempt to enhance the pains and penalties provided by law for the punishment of crime, nor is it said to the plaintiff, "you are a criminal and can have no aid from the court to enforce legal rights arising to you under a contract."

Simply no right has accrued to her under the contract if she intentionally killed the assured.

For overruling the demurrers to the insufficient pleas, the judgment must be reversed and the cause remanded.

*Reversed and remanded.*