[Civ. No. 32786. First Dist., Div. Two. Nov. 28, 1973.]

Estate of OSCAR McGOWAN, Deceased.
ROSIE L. HERMAN, Petitioner and Appellant, v.
JEAN PEARL McGOWAN, Objector and Respondent.

**COUNSEL**

Nelson H. Wild for Petitioner and Appellant.

Everett E. Power for Objector and Respondent.

**OPINION**

**TAYLOR, P. J.**—Rosie L. Herman, the sister and only heir of the deceased, Oscar McGowan, who was shot and killed by his wife, respondent, Jean Pearl McGowan, appeals from a judgment in consolidated heirship and preliminary distribution proceedings decreeing that pursuant to the conclusive presumption of Probate Code section 258,[1] respondent was entitled to succeed to one-half the proceeds of Oscar's insurance and retirement benefits as a federal employee. The question of statutory interpretation is one of first impression. We have concluded that the statutory presumption in section 258 is not conclusive where the acquittal of murder is the result of a negotiated plea and that the judgment must be reversed.

The pertinent facts were found as follows by the probate court: Oscar and respondent were married on December 13, 1969. On July 12, 1970, she shot and killed him and was charged with murder, being armed with a deadly weapon, use of a firearm in the commission of an offense, and a prior felony of grand theft. Thereafter, her attorney negotiated a plea of nolo contendere (Pen. Code, § 1016, subd. 3) to involuntary manslaughter (Pen. Code, § 192, subd. 2). The superior court subsequently approved the plea and dismissed the other matters.

Oscar had been employed as a letter carrier by the United States Post Office from March 20, 1967, until his death, and as a result of his em-

---

[1]The statute provides, so far as pertinent: "No person who has unlawfully and intentionally caused the death of a decedent . . . shall be entitled to succeed to any portion of the estate . . . ; but the portion thereof to which he would otherwise be entitled to succeed goes to the other persons entitled thereto under the provisions of this chapter . . . . *A conviction or acquittal on a charge of murder or voluntary manslaughter shall be a conclusive determination of the unlawfulness or lawfulness of a causing of death, for the purposes of this section.*" (Italics supplied.)

ployment, was insured under the Federal Employees Group Life Insurance in the amount of $20,000. As Oscar never designated a beneficiary, the $20,000 was paid to respondent and Fannie Toston, the administratrix of the estate, pursuant to an agreement approved by the court below that the administratrix would hold the funds until further order.

Oscar also contributed to the Federal Civil Service Retirement Fund without designating a beneficiary. Thus, respondent received the retirement fund proceeds of $1,355.96, and also collected $505 Social Security and Veterans Administration death benefits. She turned this amount, along with the retirement benefits, over to her attorney pending final determination of the instant matter.

Oscar died intestate, leaving respondent as his surviving spouse and no living issue. In the absence of the beneficiary designation, both the federal insurance and retirement benefits were payable first to the surviving spouse, then to the children, parents, and executor of the estate.[2] Oscar's closest living relative was his sister, appellant, Rosie L. Herman, an heir at law, pursuant to Probate Code section 223.[3]

On September 3, 1971, Rosie L. Herman filed a petition for determination of heirship, alleging that respondent was barred from succeeding to any portion of Oscar's estate or the proceeds of the Federal Employees Group Life Insurance policy or retirement benefits, and that all of the proceeds should be paid to her. Subsequently, on June 2, 1972, respondent filed a petition for preliminary distribution of the community property, a 1961 Chevrolet. By stipulation of the parties, proceedings in both petitions were consolidated and all evidence received in either matter was deemed to have been received in both. In addition to the above facts, the probate court found that the evidence in the hearing before it established beyond a reasonable doubt that respondent unlawfully and intentionally killed

[2]The federal statutes permitting the insured to designate a beneficiary supersede the community property laws of this state (*Wissner* v. *Wissner,* 338 U.S. 655 [94 L.Ed. 424, 70 S.Ct. 398], as interpreted in *Carlson* v. *Carlson,* 34 Cal.App.3d 438 [110 Cal.Rptr. 154]. An identical question relating to the status of federal retirement benefits is presently pending before our Supreme Court in *Smith* v. *Lewis* (Sac. 7981, hg. granted June 13, 1973), *In re Marriage of Wilson* (S.F. 23030, hg. granted July 18, 1973) and several other cases, where hearings were granted in June and July 1973.

[3]The statute provides: "If the decedent leaves a surviving spouse and no issue, the estate goes one-half to the surviving spouse and one-half to the decedent's parents in equal shares, or if either is dead to the survivor, or if both are dead to their issue and the issue of either of them, by right of representation."

her husband.[4] The probate court then concluded that since respondent was acquitted of the charge of murder by reason of her conviction of involuntary manslaughter, pursuant to the conclusive presumption of Probate Code section 258, she was entitled to succeed to all of the community property and one-half of the separate property (Prob. Code, § 223). Accordingly, the court entered its judgment distributing the automobile and one-half of the federal insurance and retirement proceeds to respondent, and the rest to appellant.

As indicated above, the question here presented is one of first impression in this state. Although respondent has not filed a brief and we are under no duty to research the law (Cal. Rules of Court, rule 17(b)), appellant nevertheless has the burden of demonstrating error (*Kriegler* v. *Eichler Homes, Inc.*, 269 Cal.App.2d 224, 226-227 [74 Cal.Rptr. 749]).

█ Appellant first contends that Probate Code section 258 does not apply to insurance proceeds. We do not agree. It is well established in this state that in the event of an intentional killing of the insured by the primary beneficiary, the contingent beneficiaries become entitled to the insurance proceeds. If no contingent beneficiary or beneficiaries are designated, the proceeds are payable to, and become a part of, the estate of the murdered insured (*West Coast L. Ins. Co.* v. *Crawford*, 58 Cal.App.2d 771 [138 P.2d 384]; *Davis* v. *Aetna Life Insurance Company*, 279 F.2d 304, 309) and may be recovered by his heirs (*Meyer* v. *Johnson*, 115 Cal.App. 646, 647-648 [2 P.2d 456]).

But even if assumed arguendo that a beneficiary under a life insurance policy takes by contract and the proceeds do not become a part of the estate (cf. *Turner* v. *Metropolitan Life Ins. Co.*, 56 Cal.App.2d 862, 868 [133 P.2d 859]; *Estate of Ward*, 127 Cal.App. 347, 359 [15 P.2d 901]; *Manufacturers Life Ins. Co* v. *Moore*, 116 F.Supp. 171, 175), the rule that a beneficiary who unlawfully kills the insured is precluded from recovering on the instrument (*Drown* v. *New Amsterdam Casualty Co.*, 175 Cal. 21 [165 P. 5]; *Beck* v. *West Coast Life Ins. Co.*, 38 Cal.2d 643 [241 P.2d 544, 26 A.L.R.2d 979]; *Meyer* v. *Johnson, supra; Davis* v. *Aetna Life Insurance, supra;* 27 A.L.R.3d p. 802) is not based solely on Probate Code section 258, but has a much wider foundation rooted in public policy that prohibits the killer from obtaining title to property as the fruit of his crime (*Abbey* v. *Lord*, 168 Cal.App.2d 499, 508 [336 P.2d 226];

---

[4]This finding, totally superfluous under the lower court's interpretation of the statute, appears to us as an indication that the court was far from satisfied with the result that it deemed compelled by the statute in the instant case.

*Neiman* v. *Hurff,* 11 N.J. 55 [93 A.2d 345, 347]). As the court put it in *N. Y. Mut. Life Ins. Co.* v. *Armstrong,* 117 U.S. 591, 600 [29 L.Ed. 997, 1000, 6 S.Ct. 877]: "It would be a reproach to the jurisprudence of the country, if one could recover insurance money payable on the death of a party whose life he had feloniously taken. As well might he recover insurance money upon a building that he had wilfully fired." "[T]he social interest served by refusing to permit the criminal to profit by his crime is greater than that served by the preservation and enforcement of legal rights of ownership."[5]

■   The general principle that bars the wrongdoer from unjustly enriching himself and profiting by his own wrong has been codified in Civil Code sections 2224[6] and 3517.[7] Relying on these very statutes, the Supreme Court held in *Beck* v. *West Coast Life Ins. Co., supra,* that although under the terms of the policy the murderer is entitled to the proceeds, he may neither receive nor retain them because it would be unconscionable to allow him to profit from his own wrong (see to the same effect: *West Coast L. Ins. Co.* v. *Crawford, supra,* p. 773; *Prudential Ins. Co. of America* v. *Harrison,* 106 F.Supp. 419, 422).

In the light of the above policy, we turn to the statute. Read in its entirety, Probate Code section 258, as most recently amended in 1963 (Stats. 1963, ch. 857, § 1), provides: "No person who has unlawfully and intentionally caused the death of a decedent, and no person who has caused the death of a decedent in the perpetration or attempt to perpetrate arson, rape, robbery, burglary, mayhem, or any act punishable under Section 288, Penal Code, shall be entitled to succeed to any portion of the estate or to take under any will of the decedent; but the portion thereof to which he would otherwise be entitled to succeed goes to the other persons entitled thereto under the provisions of this chapter or under the will of the decedent. A conviction or acquittal on a charge of murder or voluntary manslaughter shall be a conclusive determination of the unlawfulness or lawfulness of a causing of death, for the purposes of this section."

We think the history of the statute is pertinent. As originally enacted in

---

[5]Cardozo, The Nature of the Judicial Process (1921) page 43.

[6]Section 2224 of the Civil Code provides that "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, *or other wrongful act,* is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." (Italics added.)

[7]Section 3517 of the Civil Code sets forth that "No one can take advantage of his own wrong."

1905, as Civil Code section 1409 (Stats. 1905, ch. 449, § 7, p. 610), the statute provided: "No person who has been convicted of the murder of the decedent shall be entitled to succeed to any portion of his estate; but the portion thereof to which he would otherwise be entitled to succeed descends to the other persons entitled thereto under the provisions of this title."

This section was first construed by the Supreme Court of California in *Estate of Kirby*, 162 Cal. 91 [121 P. 370]. In that case, the court refused to extend the section to conviction of manslaughter and held that the killer was entitled to share in the estate of the deceased ancestor. At page 94, the court stated: "Whether this accords with natural right and justice is a question upon which we cannot enter. The right of inheritance in this state does not depend upon the ideas of court or counsel as to justice and natural right. The entire matter is in the control of the legislature and depends wholly upon the provisions of the statute, regardless of our notions of natural right and justice. [Citations.] The statute having made the distinction between murder and manslaughter, the courts cannot ignore it or create a definition of the word murder different from that declared in the statute and from that of the common-law and ordinary usage."

In 1955, the statute (then Prob. Code, § 258) was amended to add the words "or voluntary manslaughter," following the word "murder" (Stats. 1955, ch. 1110, § 1, p. 2108). Thus, prior to the 1963 amendment, Probate Code section 258 excluded only an intestate taker if he had been convicted of murder or voluntary manslaughter of the decedent; the conviction of one of the specified crimes was necessary. Furthermore, the section only applied if the decedent died intestate and courts had limited the application of the statute to situations clearly within its plain meaning. The 1963 amendments broadened the scope of the statute to include not only intestate takers but also those who take by the will of the decedent. Furthermore, the 1963 amendment, by adding the first sentence, declares a strong public policy that no person who has unlawfully and intentionally caused the death of a decedent is allowed to succeed. Although this addition was probably mainly designed for the murder-suicide cases, *the language clearly goes farther to apply to persons who have not been convicted of anything or even charged.* This amendment is in accord with the public policy expressed by the Civil Code sections discussed above.

The legislative history provides no clues as to the last sentence of the statute[8] here in issue. However, in our opinion, the result reached by the

---

[8]The sentence was added by the Assembly Committee on the Judiciary (Assem. J., Mar. 20, 1963, p. 1220). The same Legislature subsequently adopted Penal Code

court below was not intended by the Legislature. We cannot believe that the last sentence of section 258 was meant to effect such a drastic restriction on the broader prohibition of the first sentence, which is based on well-established and sound public policy. Significantly, the insurance cases, cited above, like the first sentence of the statute, speak in terms of the perpetration of an intentional killing.

Rather than being a substantive modification of the public policy set forth in the first sentence, the last sentence merely expresses a procedural application of a previous factual resolution of the question of innocence or guilt. It is reasonable to assume that the Legislature meant to avoid a redetermination in civil proceedings of issues that had been fully litigated in prior criminal proceedings,[9] but we do not think that the last sentence can be extended to include cases where there has been only a negotiated plea to a lesser included offense and no determination on the merits.

There are many potential reasons for entry of a nolo plea or other bargained plea which should negate its consideration as an actual determination of the degree of culpability in subsequent civil proceedings (see Notes, *Collateral Effects of a Nolo Contendere Plea,* 44 So.Cal.L.Rev. 737). A nolo contendere plea in this state necessarily implies a bargain and is seen as an agreement between the prosecution and the defendant, for the limited purpose of the particular case, and no other purpose (*Caminetti* v. *Imperial Mut. L. Ins. Co.,* 59 Cal.App.2d 476, 490-492 [139 P.2d 681]). Consequently, we think the court in any subsequent civil proceeding must independently examine the facts in order to determine whether the defendant actually committed the offense alleged for purposes of the particular civil proceeding (cf. *Davis* v. *Aetna Life Insurance Company,* 279 F.2d 304, 311).[10] The probate court did so in the instant case and

section 1016, subdivision 3, establishing the plea of nolo contendere in California (Stats. 1963, ch. 2128, § 1, p. 4418). Thus, it can be argued that the prior amendment of the Probate Code clearly did not encompass the nolo plea.

[9] For example, section 2-803, subdivision (e) of the Uniform Probate Code, Official Text 1969, provides that in the absence of a conviction of felonious and intentional killing, the probate court may determine by a preponderance of the evidence whether the killing was felonious and intentional for purposes of succession. The State Bar's March 1973 analysis of the Uniform Probate Code indicates that the present conclusive presumption of Probate Code section 258 is preferable to the possibility of two determinations on the question as contemplated by the Uniform Probate Code. The State Bar report, however, discusses only the possibility of an acquittal and presumably has reference to an acquittal after a trial or on the merits, which is substantially different from an acquittal based on a plea of nolo contendere as in the instant case.

[10] This redetermination for purposes of the civil proceeding is clearly different from the use of the plea "against the defendant as an admission in any civil suit," prohibited by Penal Code section 1016, subdivision 3.

made a finding that the evidence before it established *beyond a reasonable doubt* that respondent had unlawfully and intentionally killed Oscar, but apparently was prevented from ruling in favor of appellant-petitioner by what it considered a conclusive statutory presumption.

We hasten to add that the probate court here applied the proper standard of proof in its finding of guilt *beyond a reasonable doubt.* Obviously, if the probate court applies the standard of the preponderance of evidence ordinarily required in civil litigation, in cases where there is no actual predetermination of guilt in a criminal trial,[11] the application of the conclusive presumption of Probate Code section 258 in cases where there has been a criminal disposition on the merits, would amount to an arbitrary discrimination in the resolution of valuable property rights of third parties which could not be countenanced under the equal protection clauses of the state and federal Constitutions.

The criminal law rule that a conviction resulting from a nolo contendere or other bargained plea to a lesser included offense is in legal effect an acquittal of the greater offense, is inapposite to the instant case. The underlying reasons for the criminal law rule, i.e., double jeopardy and permitting a defendant who claims error on the lesser conviction to take an appeal without fear of subjecting himself to retrial on the greater charge (*People v. Gilmore,* 4 Cal. 376) have no bearing or relevance to the case at bar, which involves the civil rights of a third party.

Furthermore, in order for a Legislature to create a valid presumption, there must be a rational connection between the fact proved and the ultimate fact (*Mobile, J. & K. C. R. R.* v. *Turnipseed,* 219 U.S. 35, 43 [55 L.Ed. 78, 30, 31 S.Ct. 136], recently followed in *Leary* v. *United States,* 395 U.S. 6 [23 L.Ed.2d 57, 89 S.Ct. 1532], *People* v. *Stevenson,* 58 Cal.2d 794 [26 Cal.Rptr. 297, 376 P.2d 297], and *Martin* v. *Superior Court,* 17 Cal.App.3d 412 [95 Cal.Rptr. 110]). The last sentence of Probate Code section 258, as construed by the probate court, fails to meet this test to the extent that an acquittal of the greater crime resulting from a plea bargain in a criminal case should be a conclusive determination in a subsequent civil litigation of the lawfulness of the killing. The acquittal in such instance does not establish innocence of the greater crime charged, but merely means that the prosecution and the defendant have concluded that it is to their mutual advantage not to proceed to the ordeal of a trial in the particular case. The reasons for the bargain may be based on social,

---

[11]Consider, for example, the not common situation where the person chargeable with homicide commits suicide or dies before trial.

political, evidentiary or other matters wholly unrelated to the actual merits of the criminal charges originally pled. Furthermore, the plea bargain completely fails to take into account the interests of third parties. To give it the effect here contended for by respondent would deprive appellant of valuable rights without due process of law (*Bedell Engineering Co.* v. *Rouse,* 57 Cal.App.2d 734, 736 [135 P.2d 404]; *Overell* v. *Overell,* 18 Cal.App.2d 499 [64 P.2d 483]; *Bernhard* v. *Bank of America,* 19 Cal.2d 807 [122 P.2d 892]).

The judgment is reversed.

Kane, J., and Rouse, J., concurred.