STATE *ex rel.* DOROTHY (TAYLOR) MILLER

*v.*

THE HONORABLE VANCE E. SENCINDIVER

(No. 14862)

Decided December 19, 1980.

*Preiser & Wilson and Monty L. Preiser* for relator.

*Pill & Scales and Michael L. Scales* for respondent.

HARSHBARGER, JUSTICE:

Dorothy and George Taylor bought Berkeley County real property in 1968 as joint tenants with survivorship. In September, 1978, she killed him, was indicted for murder, but pled guilty to the lesser included offense of involuntary manslaughter, a misdemeanor.

Their son, Jonathan, sued to divest her title to the property. She unsuccessfully moved for summary judg-

ment and we issued a rule to show cause why prohibition[1] should not be awarded to prevent the trial.

Our Code has only one section that mentions impediments to acquisition of title to property by one who becomes the owner by killing another person:

In Chapter 42, entitled "Descent and Distribution," Article 4, Section 2, styled "Homicide bars acquisition of estate or insurance money," provides:

> No person who has been convicted of feloniously killing another, or of conspiracy in the killing of another, shall take or acquire any money or property, real or personal, or interest therein, from the one killed or conspired against, either by descent and distribution, or by will, or by any policy or certificate of insurance, *or otherwise*; but the money or the property to which the person so convicted would otherwise have been entitled shall go to the person or persons who would have taken the same if the person so convicted had been dead at the date of the death of the one killed or conspired against, unless by some rule of law or equity the money or the property would pass to some other person or persons. (Emphasis added.)

Our *Johnston v. Metropolitan Life Insurance Co.*, 85 W.Va. 70, 100 S.E. 865 (1919), is supposed to have been the germ for the Code section. We denied life insurance benefits to a

---

[1] Petitioner pleads that permitting a trial would cause unnecessary expenditure of money and judicial resources and cause her irreparable emotional harm. *Hinkle v. Black*, 164 W.Va. 112, 262 S.E.2d 744 (1979).

She asks that we not consider respondent's response. Our Rules of Appellate Procedure, effective January 1, 1980, provide in Rule 14(c) that:

> Within twenty days after service of the rule to show cause, unless the period is shortened by the Court, the respondent shall file with the Clerk of the Supreme Court the original and seven copies of his response to which exhibits may be attached, together with a memorandum of law.

The rule was issued on May 6 and respondent did not respond until August 27. Although this Court does not favor procedural defaults, our rules are ineffective if not enforced; and so we have not considered respondent's answer and memorandum of law in deciding the case.

beneficiary who murdered an insured, and twelve years later the policy thus pronounced appeared in 42-4-2, part of our descent law.[2]

In *Metropolitan Life Ins. Co. v. Hill,* 115 W.Va. 515, 177 S.E. 188 (1934), we also wrote that the common law precludes an unlawful, intentional killer from profiting from life insurance on his victim. *See* 57 W.Va. L. Rev. 85 (1955).

Other states have adopted legislation that specifically severs jointly held estates upon the intentional killing of a cotenant by the other co-owner. Uniform Probate Code, §2-803(b); Alaska—Alaska Stat. §13.11.305(b); Arizona—Ariz. Rev. Stat. §14-2-803(B); Colorado—Colo. Rev. Stat.

---

[2] Code, 42-4-2, requires the killing to be felonious before it is applicable. Statutes which prohibit felonious killers from taking are usually interpreted to exclude persons convicted of involuntary manslaughter or unintentional homicides. For example:

About insurance proceeds: *York v. Hampton,* 229 Ark. 301, 314 S.W.2d 480 (1958); *Estate of McGowan,* 35 Cal.App.3d 611, 111 Cal. Rptr. 39 (1973); *Schreiner v. High Court of Illinois Catholic Order of Foresters,* 35 Ill. App. 576 (1890); *Stacker v. Mack,* 126 Ind. App. 95, 130 N.E.2d 484 (1955); *Beene v. Gibraltar Industrial Life Ins. Co.,* 116 Ind. App. 290, 63 N.E.2d 299 (1945); *Commercial Travelers Mut. Accident Assoc. v. Witte,* ___ Ky. ___, 406 S.W.2d 145 (1966); *Travelers Ins. Co. v. Thompson,* 281 Minn. 547, 163 N.W.2d 289 (1968); *Minnesota Mut. Life Ins. Co. v. James,* 202 F. Supp. 243 (W.D.Mo. 1962); *Quick v. United Ben. Life Ins. Co.,* 287 N.C. 47, 213 S.E.2d 563 (1972); *Bounds v. Caudle,* ___ Tex. Civ. App. ___, 549 S.W.2d 438 (1977), *rev'd. on other grounds,* 560 S.W.2d 925 (1977); *Leavy, Taber, Schulz and Bergdahl v. Metropolitan Life Ins. Co.,* 20 Wash. App. 503, 581 P.2d 167 (1978); *Dowdell v. Bell,* ___ Wyo. ___, 477 P.2d 170 (1970).

About inheritance: *Floyd v. Franklin,* 251 Ala. 15, 36 So.2d 234 (1948); *Estate of Ladd,* 91 Cal. App. 3d 219, 153 Cal. Rptr. 888 (1979); *Anstine v. Hawkins,* 92 Idaho 561, 447 P.2d 677 (1968); *Re Estate of Seipel,* 29 Ill. App. 3d 71, 329 N.E.2d 419 (1975); *Crouse v. Crouse,* 214 Iowa 725, 240 N.W. 213 (1932); *Rosenberger v. Northwestern Mut. Life Ins. Co.,* 176 F. Supp. 379 (D. Kan. 1959); *Legette v. Smith,* 226 S.C. 403, 85 S.E.2d 576 (1955); *But see In re Wells,* 76 Misc.2d 458, 350 N.Y.S.2d 114 (1973).

And about joint tenancies: *Blake v. Blake,* ___ Ind. App. ___, 391 N.E.2d 848, 852 (1979); *Anderson v. Grasberg,* 247 Minn. 538, 78 N.W.2d 450 (1956); *Estate of Cox,* 141 Mont. 583, 380 P.2d 584 (1963); *Re Estate of Klein,* ___ Pa. ___, 378 A.2d 1182 (1977); *Cook v. Gisler,* 20 Wash. App. 677, 582 P.2d 550 (1978).

§15-11-803(2); Hawaii—Haw. Rev. Stat. §560:2-803(b); Kansas—Kan. Stat. §59-513; Maine—Me. Rev. Stat. tit. 18A, §2-803(b); Michigan—Mich. Comp. Laws Ann. §700.251(2); Minnesota—Minn. Stat. Ann. §524.2-803(b); Montana—Mont. Uni. Prob. Code §91A-2-803(2); Nebraska—Neb. Rev. Stat. §30-2354(b); New Mexico—N. M. Prob. Code §32A-2-803(B); North Dakota—N. D. Cent. Code §30.1-10-03(2); Utah—Utah Uni. Prob. Code §75-2-804(2). We note that these are all probate, descent statutes.

We have no such statute, unless the "or otherwise" in Code, 42-4-2 has that effect. And we believe it does not. *Accord* 20 Am. Jur. 2d *Cotenancy and Joint Ownership* §3, Footnote 18 (1965 and Supp.). No rules of statutory construction require our real property statute about estates in survivorship to be included in the ambit of our probate statute prohibiting a killer from taking or acquiring property from a person he or she feloniously dispatches. *Accord State ex rel. White v. Wirt County Court,* 63 W.Va. 230, 239, 59 S.E. 884, 891 (1907).

The Taylor property was held in joint tenancy with survivorship, defined in Code, Chapter 36, Estates in Property.

§36-1-19. Joint tenancy; tenancy by entireties; survivorship.

> When any joint tenant or tenant by the entireties of an interest in real or personal property, whether such interest be a present interest, or by way of reversion or remainder or other future interest, shall die, his share shall descend or be disposed of as if he had been a tenant in common.[3]

---

[3] The vesting of joint tenancies, tenancies by the entireties and cotenancies is discussed in *Goldberg v. Goldberg,* 217 Cal. App. 2d 623, 32 Cal. Rptr. 93 (1963); *Oleff v. Hodapp,* 129 Ohio St. 432, 195 N.E. 838 (1935); *Shuman v. Schick,* 95 Ohio App. 413, 120 N.E.2d 330 (1953); *Smith v. Greenburg,* 121 Colo. 417, 218 P.2d 514 (1950); *Vesey v. Vesey,* 237 Minn. 295, 54 N.W.2d 385 (1952); *Neiman v. Hurff,* 11 N.J. 55, 93 A.2d 345 (1952); *Hargrove v. Taylor,* 236 Or. 451, 389 P.2d 36 (1964); *In re Cox' Estate,* 141 Mont. 583, 380 P.2d 584 (1963); and *Sikora v. Sikora,* 160 Mont. 27, 499 P.2d 808 (1972). And see the excellent annotation, Felonious Killing of One Cotenant or Tenant by the Entireties by the

§36-1-20. When survivorship preserved.

The preceding section [§ 36-1-19] shall not apply to any estate which joint tenants have as executors or trustees, nor to an estate conveyed or devised to persons in their own right, when it manifestly appears from the tenor of the instrument that it was intended that the part of the one dying should then belong to the others. Neither shall it affect the mode of proceeding on any joint judgment or decree in favor of, or on any contract with, two or more, one of whom dies.

The Taylors' rights were established by their deed and did not involve descent or inheritance. *See United Trust Co. v. Pyke,* 199 Kan. 1, 427 P.2d 67 (1967); *Bradley v. Fox,* 7 Ill.2d 106, 129 N.E.2d 699 (1955); *Beddingfield v. Estill & Newman,* 118 Tenn. 39, 100 S.W. 108 (1907); *Ashwood v. Patterson,* ____ Fla. ____, 49 So.2d 848 (1951).

The right to succeed to property as a surviving joint tenant is another field and subject matter pre-empted by the legislature. . . . By these statutes the legislature has provided for the creation and termination of estates in joint tenancy and the requirements necessary for succeeding to such property by right of survivorship. The statutes were applied in In re Estate of Foster, 182 Kan. 315, 320 P.2d 855, and it was said that in none of them has the legislature seen fit to limit or restrict the right of a surviving joint tenant to succeed to the property because of criminal conduct on his part, and it was held:

"The distinctive characteristic of joint tenancy is survivorship, and a surviving joint tenant of real property does not take as a new acquisition under the laws of descent and distribution, but under the

Other as Affecting the Latter's Right in the Property, 42 A.L.R.3d 1116 (1972 and Supp.). Here we are not dealing with either common law joint tenancy or tenancy by the entireties, and except to the extent that equitable principles may be applicable to our statutorily created estates in survivorship that are also imposed upon such tenancies, we are unassisted by these authorities. *See also* Annotation, What Acts by One or More of Joint Tenants Will Sever or Terminate the Tenancy, 64 A.L.R.2d 918 (1959 and later case service).

conveyance by which the joint tenancy was created, his estate merely being freed from participation of the other."

*United Trust Co. v. Pyke,*
*supra* 427 P.2d, at 76.

Equity would prevent one from profiting from his own wrong, and many courts have analyzed the problem from this perspective.[4] Some find that title held in joint tenancy with survivorship is vested by the original conveyance and subsequent acts, even if equitably wrong, cannot divest a tenant of rights to acquire a survivorship estate. *Smith v. Greenburg, supra; United Trust Company v. Pyke, supra; Beddingfield v. Estill & Newman,* 118 Tenn. 39, 100 S.W. 108 (1907); *Shuman v. Schick, supra.* Others limit the wrongdoer's estate, creating a constructive trust by which the property is held for those who would have acquired it were it not for the killing. *Pannone v. McLaughlin, supra; Bradley v. Fox, supra; In re Cox' Estate, supra; Colton v.*

---

[4] In Re Estate of Griswold, 13 Ariz. App. 218, 475 P.2d 508 (1970); *Johansen v. Pelton,* 8 Cal. App. 3d 625, 87 Cal. Rptr. 784 (1970); *Welch v. Welch,* ___ Del. Ch. ___, 252 A.2d 131 (1969); *Colton v. Wade,* 32 Del. Ch. 122, 80 A.2d 923 (1951); *Ashwood v. Patterson,* ___ Fla. ___, 49 So.2d 848 (1951); *Bradley v. Fox,* 7 Ill.2d 106, 129 N.E.2d 699 (1955); *National City Bank v. Bledsoe,* 237 Ind. 130, 144 N.E.2d 710 (1957); *Re Estate of Shields,* 1 Kan. App. 2d 688, 574 P.2d 229 (1977), *affirmed,* 584 P.2d 139 (1978); *Cowan v. Pleasant,* ___ Ky. ___, 263 S.W.2d 494 (1953); *Pannone v. McLaughlin,* 37 Md. App. 395, 377 A.2d 597 (1977); *Diamond v. Ganci,* 328 Mass. 315, 103 N.E.2d 716 (1952); *Goldsmith v. Pearce,* 345 Mich. 146, 75 N.W.2d 810 (1956); *Vesey v. Vesey,* 237 Minn. 295, 54 N.W.2d 385, 32 A.L.R.2d 1090 (1952); *Grose v. Holland,* 357 Mo. 874, 211 S.W.2d 464 (1948); *Sikora v. Sikora,* 160 Mont. 27, 499 P.2d 808 (1972); *In Re Cox' Estate,* 141 Mont. 583, 380 P.2d 584 (1963); *Neiman v. Hurff,* 11 N.J. 55, 93 A.2d 345 (1952); *In Re Nicpon's Estate,* 424 N.Y.S.2d 100 (Sur.Ct. 1980); *Re Hawkins' Estate,* 213 N.Y.S.2d 188 (Sur.Ct. 1961); *Van Alstyne v. Tuffy,* 103 Misc. 455, 169 N.Y.S. 173 (Sup. Ct. 1918); *Porth v. Porth,* 3 N.C. App. 485, 165 S.E.2d 508 (1969); *Hargrove v. Taylor,* 236 Or. 451, 389 P.2d 36 (1964); *Preston v. Chabot,* ___ Vt. ___, 412 A.2d 930 (1980); *Re King's Estate,* 261 Wis. 266, 52 N.W.2d 885 (1952).

See also Restatement of the Law of Restitution, §188, Comments a and b; Bogert, Trusts and Trustees (2d ed. 1960), §478; McGovern, Homicide and Succession to Property, 68 Mich. L. Rev. 65 (1969); Wade, Acquisition of Property by Wilfully Killing Another—A Statutory Solution, 49 Harv. L. Rev. 715 (1936); Annotation, 42 A.L.R.3d 1116 (1972 and Supp.).

*Wade, supra; Bryant v. Bryant,* 193 N.C. 372, 137 S.E. 188, 51 A.L.R. 1100 (1927). Some sever the estate into a tenancy in common, *Re Estate of Shields, supra; Johnasen v. Pelton, supra; Neiman v. Hurff, supra; Porth v. Porth, supra; Re Estate of Coslet,* 39 Ill. App. 3d 305, 349 N.E.2d 499 (1976); *Duncan v. Vassaur,* Okl., 550 P.2d 929 (1976). Three courts have deprived the killer of all portions of the tenancy. *Sikora v. Sikora, supra; Van Alstyne v. Tuffy, supra; Welch v. Welch, supra.*

We decline to decide that a joint tenancy with survivorship created by prior conveyance is vested property that may be divested by the killing of one's cotenant.[5] We decline because by the Legislature's modifications of the common law concerning joint tenancies, tenancies by the entireties, and cotenancies which allow creation by the parties of the incident of survivorship when intention to do so has been made clearly evident in a titling document, the Legislature has in effect preempted the matter. *See DeLong v. Farmers Building and Loan Assn.,* 148 W.Va. 625, 137 S.E.2d 11, 17 (1964); 4 Thompson on Real Property §1782 (1979 Repl. Vol.). And although some courts have held that killing destroys statutorily created survivorship in a joint tenancy, 4 Thompson on Real Property §1781, Footnote 2 (1979 Repl. Vol.), we prefer that the Legislature decide the matter, considering that this particular estate is its creation, and

---

[5] Property rights are highly valued by the state and there is a constitutional prohibition against forfeiture of estate by criminal conviction. W. Va. Const. art. III, §18 ("No conviction shall work corruption of blood or forfeiture of estate."); Code, 61-11-4. This Court has recognized these rights: "Whatever may have been the status of such a person [convicted of a felony] at the common law—and we find many expressions even in the early cases which seem to limit the application of the civiliter mortuus idea to particular cases—we think our Constitution (article 3, § 18) and statutes (section 4, c. 152, Barnes' Code 1918 [Code 1913, c. 152, §4 (sec. 5461)]), abolishing corruption of blood and forfeiture of estate on conviction of a felony, plainly preserve the property rights of one so convicted. *Haynes v. Peterson,* 125 Va. 730, 100 S.E. 471, 6 A.L.R. 1456; 2 Kent, Commentaries, p. 386. So, we hold with Minor (2 Minor) Real Property, §1096) that, unless modified by other statutory provision, 'one attainted may not only take, but may hold and dispose of land as freely as others'." *Martin v. Long,* 92 W.Va. 624, 115 S.E. 791, 792 (1923).

interposition of equitable doctrines applicable to common law entitlements in real property, although possible, seems to us not appropriate.[6]

Our conclusion makes it unnecessary to decide what is the effect of the guilty plea to involuntary manslaughter upon the ability of one seeking to prove in a civil suit a felonious killing invoking Code, 42-4-2, *supra. See generally Interstate Stores v. Williamson*, 91 W.Va. 156, 112 S.E. 301 (1922); Annot., Conviction or Acquittal as Evidence of the Facts on Which it was Based in Civil Action, 18 A.L.R.2d 1287 (1951 and later case service); *Davis v. Aetna Life Insurance Co.*, 279 F.2d 304 (9th Cir. 1960); *In re Estate of McGowan*, 35 Cal. App. 3d 611, 111 Cal. Rptr. 39, 44-45 (1973); *In re Estate of Laspy* Mo. App., 409 S.W.2d 725 (1966); *In re Kravitz' Estate*, 418 Pa. 319, 211 A.2d 443 (1965); *Cook v. Gisler*, 20 Wash. App. 677, 582 P.2d 550 (1978).

There is presently no statutory caveat that denies a survivor's title to a slayer of his or her co-owner. The Legislature may do so; we decline to in this area in which it has clearly spoken. As a matter of law, Miller cannot be deprived of her property. Therefore, we grant her writ and prohibit further trial.

*Writ granted.*

---

[6] *See also Strickland v. Wysowatcky*, 128 Colo. 221, 250 P.2d 199 (1952); *Smith v. Greenburg, supra* 218 P.2d, at 519; *Anstine v. Hawkins, supra* 447 P.2d, at 679; *Re Estate of Shields, supra* 574 P.2d, at 231-233; *Wenker v. Landon*, 161 Or. 265, 88 P.2d 971, 973 (1939).