509 S.E.2d 594

Andrew LAKATOS and Virginia
Lakatos, Appellants

v.

ESTATE OF Frank J. BILLOTTI,
Deceased, and Rose Ann
Billotti, Appellees

No. 25056.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 23, 1998.

Decided Nov. 20, 1998.

David J. Straface, Esq., John R. Angotti, Esq., Angotti & Straface, Morgantown, for the Appellants.

Edmund J. Rollo, Esq., Morgantown, for the Appellees.

MAYNARD, Justice.

The appellants, Andrew and Virginia Lakatos, parents of Carolyn Sue Billotti, deceased, appeal the December 1, 1997 order of the Circuit Court of Monongalia County, West Virginia. The circuit court held that Carolyn Billotti's estate is not entitled to any interest in the property Carolyn Billotti owned in joint tenancy with her husband, Frank J. Billotti. We disagree.

Frank J. Billotti and Carolyn Sue Billotti owned three parcels of real estate. One parcel was owned as tenants in common without the right of survivorship and two parcels were owned as joint tenants with the right of survivorship. On October 9, 1982, Frank Billotti murdered his wife and two daughters. Carolyn Billotti died intestate; her only heirs at law were her husband, Frank Billotti, and her parents, Andrew and Virginia Lakatos, the appellants in this case. Frank Billotti was convicted of the murders and was sentenced to life in prison without the possibility of parole. Billotti died in prison on November 28, 1996.

On November 15, 1982, shortly after he committed the murders, Frank Billotti conveyed without consideration the two properties he held in joint tenancy with his wife to his mother, Rose Ann Billotti, the appellee in this case. On January 11, 1990, Rose Ann Billotti conveyed the two properties to a straw party, Ellen F. Harner. Contemporaneously, Ellen F. Harner conveyed the property to Frank J. Billotti and Rose Ann Billotti by deed of even date therewith.

The appellants filed a complaint in circuit court, seeking partition of the three parcels of real estate which were owned by Carolyn Billotti and Frank Billotti. The court granted the request in part and denied the request in part. The request for partition of the property held as tenants in common was granted and the court ordered the property be sold at public auction.[1] Pursuant to *State ex rel. Miller v. Sencindiver*, 166 W.Va. 355, 275 S.E.2d 10 (1980), the court denied the request for partition of the two parcels held in joint tenancy. The appellants appeal the circuit court's order as it relates to the denial of partition of the properties held in joint tenancy.

On appeal, the appellants contend the circuit court erred in denying their request for partition of the two properties which were held in joint tenancy with survivorship. They argue they are entitled to partition of the properties because West Virginia law prohibits Frank Billotti from profiting from the murder of his wife.

Joint tenancy is described as "[a]n estate held by two persons ... [in] which the cotenants enjoy equally during their lives and which goes wholly to the survivor as an estate of inheritance upon the death of either of them." *In re King's Estate*, 261 Wis. 266, 269, 52 N.W.2d 885, 887 (1952). This Court previously held:

> Code, 42–4–2, part of our statute on descent and distribution, prohibits one who feloniously kills another from taking or acquiring property from the victim; but Code, 42–4–2 and 36–1–20 are separate statutes in separate chapters on unrelated topics and should not be read in *pari materia*. Therefore, we will not apply the statutory prohibition in Code, 42–4–2 to estates created by Code, 36–1–20.

Syllabus Point 2, *Miller, supra*. W.Va.Code § 36–1–20 (1981) reads as follows:

> (a) The preceding section [§ 36–1–19] shall not apply to any estate which joint tenants have as executors or trustees, nor to an estate conveyed or devised to persons in their own right, when it manifestly appears from the tenor of the instrument that it was intended that the part of the one dying should then belong to the others. Neither shall it affect the mode of proceed-

---

**1.** This portion of the circuit court's order was not appealed by either party and is, therefore, not considered in this opinion.

ing on any joint judgment or decree in favor of, or on any contract with, two or more, one of whom dies.

(b) When the instrument of conveyance or ownership in any estate, whether real estate or tangible or intangible personal property, links multiple owners together with the disjunctive "or," such ownership shall be held as joints tenants with the right of survivorship, unless expressly stated otherwise.

It is this holding that we revisit today.

We begin by reviewing this Court's previous opinions regarding the public policy considerations of this important issue in West Virginia. This Court has on prior occasions plainly and unequivocally stated its aversion to permitting a murderer to profit from his or her wrongful act. In *Johnston v. Metropolitan Life Ins. Co.*, 85 W.Va. 70, 100 S.E. 865 (1919), the wife who was named as the beneficiary under a life insurance policy was denied the right to recover the proceeds of the policy upon the death of her husband whom she had murdered. The *Johnston* Court stated:

It would be monstrous for the courts to lend their aid to anyone for the purpose of enriching himself by the commission of murder, and to entertain suit on behalf of the beneficiary to recover upon this policy of insurance would be doing that very thing. It is against the policy of our law to reward one for the commission of crime, and whenever the effect of the enforcement of a right which one would otherwise have would be to give him an advantage by reason of his felonious act, the courts will decline to entertain it.

*Id.* at 71–72, 100 S.E. at 866.

In *Metropolitan Life Ins. Co. v. Hill*, 115 W.Va. 515, 177 S.E. 188 (1934), this Court further held that the principle articulated in *Johnston* was not limited to murder but applied to any unlawful intentional cause of death, whether felonious or not. An insurance company brought suit in *Hill* to determine who should receive the proceeds of a policy on the life of William A. Hill. His wife, the beneficiary named in the policy and his sole distributee, killed him and was convicted of involuntary manslaughter. The *Hill*

Court stated, "The Johnston opinion displays no intention to limit the test to *murder* in a technical sense. The basis of the opinion is the fundamental principle of justice that *one shall not profit by his own wrong.*" *Id.* at 518, 177 S.E. at 189.

West Virginia's "slayer statute," W.Va. Code § 42–4–2, was enacted after the *Johnston* decision. The *Hill* Court explained that the statute was a codification of the policy espoused in *Johnston* and was enacted to arrange for the disposition of property withheld from the killer because *Johnston* left the proceeds of the policy with the insurance company. W.Va.Code § 42–4–2 (1931) reads as follows:

No person who has been convicted of feloniously killing another, or of conspiracy in the killing of another, shall take or acquire any money or property, real or personal, or interest therein, from the one killed or conspired against, either by descent and distribution, or by will, or by any policy or certificate of insurance, or otherwise; but the money or the property to which the person so convicted would otherwise have been entitled shall go to the person or persons who would have taken the same if the person so convicted had been dead at the date of the death of the one killed or conspired against, unless by some rule of law or equity the money or the property would pass to some other person or persons.

We now must determine if this code section applies to property held in joint tenancy with the right of survivorship. W.Va.Code § 42–4–2 was discussed in *State ex rel. Miller v. Sencindiver*, 166 W.Va. 355, 275 S.E.2d 10 (1980). In *Miller*, Dorothy and George Taylor owned property as joint tenants with survivorship. Dorothy killed George, was indicted for murder, but pleaded guilty to involuntary manslaughter. Their son sued to divest Dorothy's title to the property. After listing the states which had adopted legislation to sever jointly held estates when a cotenant intentionally kills the co-owner, the *Miller* Court determined, "We have no such statute, unless the 'or otherwise' in Code, 42–4–2 has that effect. And we believe it does not." *Miller* at 358, 275 S.E.2d at 12. The

Court reasoned that "[t]he Taylors' rights were established by their deed and did not involve descent or inheritance." *Id.* at 359, 275 S.E.2d at 13 (citations omitted). In other words, W.Va.Code § 42–4–2, which is included in the chapter titled "Descent and Distribution," did not apply to a survivorship created in a deed pursuant to W.Va.Code § 36–1–20, which is included in the chapter titled "Estates and Property."

The *Miller* Court acknowledged that many courts have analyzed this problem from the perspective that equity prevents one from profiting from his wrong and went on to discuss the four methods courts have used to deal with the property issue:

> Some find that title held in joint tenancy with survivorship is vested by the original conveyance and subsequent acts, even if equitably wrong, cannot divest a tenant of rights to acquire a survivorship estate. Others limit the wrongdoer's estate, creating a constructive trust by which the property is held for those who would have acquired it were it not for the killing. Some sever the estate into a tenancy in common[.] Three courts have deprived the killer of all portions of the tenancy. (Citations omitted).

*Miller* at 360–61, 275 S.E.2d at 13–14. *See also* John W. Fisher, II, *Joint Tenancy in West Virginia: A Progressive Court Looks at Traditional Property Rights,* 91 W.Va. L.Rev. 267, 295 (1989). This Court finally "decline[d] to decide that a joint tenancy with survivorship created by prior conveyance is vested property that may be divested by the killing of one's cotenant." *Miller* at 361, 275 S.E.2d at 14 (footnote omitted). The ultimate result was that Dorothy was entitled to sole ownership of the property in spite of the fact she shot and killed her husband.

█ We no longer believe this decision accurately reflects the clear and actual intent of the Legislature. When our slayer statute, W.Va.Code § 42–4–2, was adopted, the phrase "or otherwise" was included in the statute, and the phrase is found following a list of methods by which one may take property. The list includes descent and distribution, will, or by any policy or certificate of insurance. The words "or otherwise" contained in W.Va.Code § 42–4–2 (1931) mean, in addition to descent and distribution, will, and policy or certificate of insurance, any and every other way one could take property, including joint tenancy with the right of survivorship. To the extent that *State ex rel. Miller v. Sencindiver, supra,* is inconsistent with this holding, it is overruled.

The Supreme Court of Montana's reasoning in *In re Cox' Estate,* 141 Mont. 583, 380 P.2d 584 (1963), is persuasive. In that case, a husband and wife, Jess and Bess Cox, held jointly owned property. Jess murdered his wife, then committed suicide. Jess's heirs thereupon sought to inherit the entire property. The Montana court found that Jess became an "involuntary trustee" of Bess's share for the benefit of her heirs.[2] The court said:

> If we accept the petitioner's view, then we must believe that the Legislature contemplated a situation where a joint owner would feloniously kill the other joint owner, thereby taking all, and approved such a result. We cannot believe that such an abhorrent result was contemplated by the Legislature.

> \* \* \* \* \* \*

> We, too, find it unthinkable that our Legislature contemplated giving the fruits of his crime to one who commits a homicide, and find inherent in the statute dealing with joint property the reservation that the felonious killer shall not benefit by his wrong.

*Id.* at 589–90, 380 P.2d at 587–88.

█ Likewise, the West Virginia Legislature did not contemplate giving the fruits of his or her crime to one who commits a homicide. When one joint tenant murders his or her cotenant, W.Va.Code § 42–4–2 (1931) controls who acquires or takes the property. W.Va.Code § 42–4–2 specifically states, in part, that "the money or the property to which the person so convicted would otherwise have been entitled shall go to the person or persons who would have taken the same if the person so convicted had been

---

2. Title to Jess's share was not brought into issue by the pleadings.

dead at the date of the death of the one killed..., unless by some rule of law or equity the money or the property would pass to some other person or persons ." This plain statutory language clearly provides that upon the death of the victim, the total estate held in a joint tenancy passes in its entirety to the person or persons who would have taken the same if the slayer had predeceased the victim. If Frank Billotti had died before his wife, Carolyn would have taken the entire property which would have passed to her heirs at the time of her death. We reach that same result today. The entire property at issue here passes to Carolyn's heirs.

Even in the complex and sophisticated world of modern law, we still treasure and revere our ancient equitable maxims. These principles of law became equitable maxims because the simple, immutable truths which they contain are so basically and universally fair that they are without dispute obvious to all. Aside from our slayer statute, the old equitable maxim *nemo ex suo delicto meliorem suam conditionem facere potest,* which we commonly state as no man should profit from his own wrong, but which literally means no one can make his condition better by his own misdeed, supports the conclusion we reach today.

Having concluded that W.Va.Code § 42–4–2 (1931) applies to this case, we find the statute controls who takes the property. As Carolyn Billotti's heirs, Andrew and Virginia Lakatos own the entire property. Rose Billotti takes nothing.

The decision of the Circuit Court of Monongalia County is reversed.

Reversed.