532 S.E.2d 43

**CAPITOL CHRYSLER–PLYMOUTH, INC., a West Virginia Corporation, Plaintiff Below, Appellant,**

v.

**Sharon D. MEGGINSON, Defendant Below, Appellee.**

**No. 26734.**

Supreme Court of Appeals of West Virginia.

Submitted Feb. 16, 2000.

Decided April 24, 2000.

Concurring and Dissenting Opinion of Justice Starcher July 20, 2000.

Matthew J. Hayes, Pepper, Nason & Hayes, Charleston, West Virginia, Attorney for Appellee.

David S. Skeen, South Charleston, West Virginia, Attorney for Appellant.

PER CURIAM:

This appeal was brought by Capitol Chrysler–Plymouth, Inc., plaintiff below, and appellant herein (hereinafter referred to as "Capitol"), from two adverse jury verdicts in the Circuit Court of Kanawha County. Capitol instituted a civil fraud action against Sharon D. Megginson, defendant below and appellee herein (hereinafter referred to as "Ms. Megginson"). Ms. Megginson then filed a counterclaim asserting breach of contract against Capitol. A jury ruled against Capitol's claim, but awarded Ms. Megginson $15,000.00 on her breach of contract counterclaim. In this appeal, Capitol contends that the circuit court committed error by (1) refusing to set aside the adverse verdict on its fraud claim and (2) refusing to set aside the verdict on Ms. Megginson's claim for breach of contract. Based upon the parties' arguments on appeal, the record designated for appellate review, and the pertinent authorities, we affirm, in part, and reverse, in part, the decision of the Circuit Court of Kanawha County.

## I.

### FACTUAL AND PROCEDURAL HISTORY

This case involves the acquisition of a motor vehicle by Ms. Megginson from Capitol, an automobile dealership located in South Charleston. On August 20, 1997, Ms. Megginson visited Capitol for the purpose of making a trade-in deal on her car, a 1997 Chevrolet Cavalier. At the time of the visit, Ms. Megginson owed Huntington Banks approximately $16,000.00 under the financing agreement for her current vehicle.[1]

While Ms. Megginson was looking at cars on Capitol's lot, she was approached by Barbara Huffman (hereinafter referred to as "Ms. Huffman"), a salesperson employed by Capitol. Ms. Megginson told Ms. Huffman that she was interested in a 1997 Chrysler Sebring that was on the lot. Ms. Huffman accompanied Ms. Megginson on a test drive of the Sebring. At some point during the test drive, Ms. Huffman initiated a conversation regarding the possibility of Ms. Megginson leasing the Sebring. Ms. Megginson informed Ms. Huffman that she owed approximately $16,000.00 on the financing note for her Cavalier. Ms. Huffman advised Ms. Megginson that an arrangement could be reached to lease the Sebring.

When Ms. Megginson and Ms. Huffman returned to Capitol's lot, Ms. Huffman began processing the paperwork for lease of the Sebring. Ms. Megginson was told that the trade-in value of her Cavalier was $11,286.00. One of the documents Ms. Huffman presented to Ms. Megginson was designated as a "Haggle–Free" agreement. On the "balance owed on trade-in" line of the Haggle–Free agreement, Ms. Huffman had inserted the amount of $2,064.00. That sum was supposed to represent the amount owed by Ms. Megginson on her Cavalier. After Ms. Megginson signed all documents given to her by Capitol employees, she was told to return the next day to pick up the Sebring. Ms. Megginson returned to Capitol on August 21, 1997, and was given the keys to the Sebring.

On August 26, 1997, Capitol issued a check to Huntington Banks in the amount of $2,064.00, which represented Capitol's understanding of the amount owed by Ms. Megginson on the Cavalier's financing note. Huntington Banks rejected the check as insufficient. Eventually, Huntington Banks repossessed the Cavalier and sold it at a loss. Deficiency from the sale of the Cavalier totaled $7,019.25. Huntington Banks held Ms. Megginson responsible for payment of the deficiency.

On September 26, 1997, Capitol filed the instant action against Ms. Megginson, alleging fraud in her procurement of the Sebring. Ms. Megginson then filed a counterclaim for breach of contract. A jury trial was held and on January 29, 1999, the jury returned verdicts in favor of Ms. Megginson and awarded to her $15,000.00. The trial court denied post-trial motions by Capitol. This appeal resulted from the jury verdicts.

## II.

### STANDARD OF REVIEW

■ In this appeal, Capitol challenges the circuit court's denial of its post-trial motions.

---

1. The Cavalier was purchased from Joe Holland Chevrolet.

We clarified the standard of review of post-trial motions in Syllabus point 1, in part, of *Alkire v. First National Bank of Parsons,* 197 W.Va. 122, 475 S.E.2d 122 (1996), as follows:

> In reviewing a trial court's denial of a motion for judgment notwithstanding the verdict,[2] it is not the task of the appellate court reviewing facts to determine how it would have ruled on the evidence presented. Its task is to determine whether the evidence was such that a reasonable trier of fact might have reached the decision below. Thus, in ruling on a denial of a motion for judgment notwithstanding the verdict, the evidence must be viewed in the light most favorable to the nonmoving party. If on review, the evidence is shown to be legally insufficient to sustain the verdict, it is the obligation of the appellate court to reverse the circuit court and to order judgment for the appellant.

(Footnote added). In Syllabus point 1 of *Kessel v. Leavitt,* 204 W.Va. 95, 511 S.E.2d 720 (1998), this Court reiterated that "[a]n appellate court will not set aside the verdict of a jury, founded on conflicting testimony and approved by the trial court, unless the verdict is against the plain preponderance of the evidence." *Accord* Syl. pt. 1, *Walker v. Monongahela Power Co.,* 147 W.Va. 825, 131 S.E.2d 736 (1963); Syl. pt. 2, *Stephens v. Bartlett,* 118 W.Va. 421, 191 S.E. 550 (1937). Moreover, we have ruled that

> [i]n determining whether there is sufficient evidence to support a jury verdict, the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved.

Syl. pt. 5, *Orr v. Crowder,* 173 W.Va. 335, 315 S.E.2d 593 (1983). *Accord* Syl. pt. 6, *Maples v. West Virginia Dep't of Commerce,* 197 W.Va. 318, 475 S.E.2d 410 (1996).

### III.

### DISCUSSION

#### A. The Jury's Rejection of Capitol's Claim for Fraud

■ Capitol prosecuted its action against Ms. Megginson based on the theory of fraud. This Court recognized long ago that

> [w]here one person induces another to enter into a contract by false representations, which he is in a situation to know, and which it is his duty to know, are untrue, he, in contemplation of law, does know the statements to be untrue, and, consequently, they are held to be fraudulent, and the person injured has a remedy for the loss sustained by an action for damages. It is not indispensable to a recovery that the defendant actually knew them to be false.

Syl. pt. 1, *Horton v. Tyree,* 104 W.Va. 238, 139 S.E. 737 (1927). *Accord* Syl. pt. 4, *Cordial v. Ernst & Young,* 199 W.Va. 119, 483 S.E.2d 248 (1996). This Court set out the elements of a fraud action in Syllabus point 1 of *Lengyel v. Lint,* 167 W.Va. 272, 280 S.E.2d 66 (1981):

> The essential elements in an action for fraud are: (1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied on it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied on it.

*Accord* Syl. pt. 2, *Bowling v. Ansted Chrysler–Plymouth–Dodge,* 188 W.Va. 468, 425 S.E.2d 144 (1992); Syl. pt. 2, *Muzelak v. King Chevrolet, Inc.,* 179 W.Va. 340, 368 S.E.2d 710 (1988).

---

2. We hasten to point out that, with the 1998 amendments to Rule 50 of the West Virginia Rules of Civil Procedure, a judgment notwithstanding the verdict is now referred to as a judgment as a matter of law. "The amendment did not ... affect either the standard by which a trial judge reviews motions under the rule or the standard by which an appellate court reviews a trial court's ruling." *Barefoot v. Sundale Nursing Home,* 193 W.Va. 475, 482 n. 7, 457 S.E.2d 152, 159 n. 7 (1995).

■ In the instant proceeding, the evidence was undisputed that at the time of the leasing transaction between Ms. Megginson and Capitol, Ms. Megginson owed approximately $16,000.00 to Huntington Banks for the financing of her Cavalier. A material issue of conflict centered around the placement of the sum of $2,064.00 on the Haggle–Free agreement as the actual amount owed by Ms. Megginson to Huntington Banks. Two witnesses testified regarding the issue, and further evidence was adduced at trial.

First, Capitol's employee, Ms. Huffman, testified that Ms. Megginson told her that only $2,064.00 was owed on the Cavalier. Second, Ms. Megginson testified that she did not inform Ms. Huffman that only $2,064.00 was owed on the Cavalier. Ms. Megginson further testified that she assumed that the $2,064.00 figure represented the amount she would have to pay as part of the financing of the Sebring. Moreover, there was additional evidence that other Capitol employees involved in the transaction had assumed that someone from Capitol contacted Huntington Banks to confirm the actual amount owed by Ms. Megginson on the Cavalier. In spite of this assumption, the evidence ultimately revealed that no one from Capitol actually contacted Huntington Banks to confirm the exact debt owed to the bank by Ms. Megginson.

In view of the evidence on the issue of fraud, we are reluctant to disturb the jury's rejection of Capitol's fraud claim for two reasons. First, a key consideration in our decision involves witness credibility. Ms. Huffman testified that Ms. Megginson gave her the erroneous figure of $2,064.00. In contrast, Ms. Megginson testified that she told no Capitol employee that she owed only $2,064.00 on the Cavalier. Ms. Megginson explained that when she saw the erroneous figure on the Haggle–Free agreement, she believed the figure represented the amount she would have to pay Capitol as part of the financing arrangement for leasing the Sebring. The jury chose to believe Ms. Megginson. This Court has held that " '[w]hen a case involving conflicting testimony and circumstances has been fairly tried, under proper instructions, the verdict of the jury will not be set aside unless plainly contrary to the weight of the evidence or without sufficient evidence to support it.' Syl. pt. 4, *Laslo v. Griffith,* 143 W.Va. 469, 102 S.E.2d 894 (1958)." Syl. pt. 2, *Walker v. Monongahela Power Co.,* 147 W.Va. 825, 131 S.E.2d 736 (1963). *See also* Syl. pt. 2, *Skeen v. C & G Corp.,* 155 W.Va. 547, 185 S.E.2d 493 (1971) ("It is the peculiar and exclusive province of a jury to weigh the evidence and to resolve questions of fact when the testimony of witnesses regarding them is conflicting and the finding of the jury upon such facts will not ordinarily be disturbed."); Syl. pt. 2, *French v. Sinkford,* 132 W.Va. 66, 54 S.E.2d 38 (1948) ("Where, in the trial of an action at law before a jury, the evidence is conflicting, it is the province of the jury to resolve the conflict, and its verdict thereon will not be disturbed unless believed to be plainly wrong.").

■ The second reason we believe the jury's verdict rejecting Capitol's fraud claim must be affirmed is the failure of Capitol to produce sufficient evidence to establish that Capitol actually relied upon fraudulent representations by Ms. Megginson. The general manager of Capitol, Jamie Fuentes, testified that it was a policy of Capitol to verify the pay-out of all customer-owned vehicles before finalizing an agreement. Mr. Fuentes further testified that he assumed that Ms. Huffman, on behalf of Capitol, had verified the pay-out amount. Additionally, the business manager for Capitol, Tony Knight, testified that he assumed that Ms. Huffman had verified the amount of the pay-out. Ms. Huffman testified that she assumed Mr. Knight was going to verify the pay-out. This evidence clearly reveals that Capitol relied upon its own employees in accepting $2,064.00 as the pay-out, regardless of how that figure was derived. Under similar facts, we held in Syllabus point 5 of *Cordial v. Ernst & Young* that

[t]hough a purchaser may rely upon particular and positive representations of a seller, yet if he undertakes to inform himself from other sources as to matters easily ascertainable, by personal investigation, and the defendant has done nothing to prevent full inquiry, he will be deemed to

have relied upon his own investigation and not upon the representations of the seller. 199 W.Va. 119, 483 S.E.2d 248 (internal quotations and citation omitted). *Accord* Syl. pt. 5, *Jones v. McComas,* 92 W.Va. 596, 115 S.E. 456 (1922). In Syllabus point 6 of *Jones,* we held that "[w]here both parties to a contract have equal means and opportunity to acquire information, so that by ordinary diligence either may rely on his own judgment, they will be presumed to have done so, and if not, they must abide by the consequences of their own folly or carelessness." Syl. pt. 6, *id.*

## B. The Jury's Verdict on Ms. Megginson's Counterclaim for Breach of Contract

Ms. Megginson filed a counterclaim against Capitol alleging breach of contract resulting from Capitol's failure to pay the Huntington Banks loan, as well as Capitol's failure to timely file documents to obtain a valid motor vehicle license plate and registration for the Sebring. Capitol contends that the adverse jury verdict for $15,000.00 was erroneous as a matter of law. This Court has recognized that "[t]here are instances ... where the evidence is of such a character as to warrant the court in assuming its sufficiency or insufficiency as a matter of law." *Gordon v. Dickinson,* 100 W.Va. 490, 500, 130 S.E. 650, 654 (1925).

In *Art's Flower Shop, Inc. v. Chesapeake and Potomac Telephone Co. of West Virginia, Inc.,* "we defined a contract as an offer and an acceptance supported by consideration." 186 W.Va. 613, 616–17, 413 S.E.2d 670, 673–74 (1991) (citing *First Nat'l Bank of Gallipolis v. Marietta Mfg. Co.,* 151 W.Va. 636, 153 S.E.2d 172 (1967)). *See also War-den v. Bank of Mingo,* 176 W.Va. 60, 62, 341 S.E.2d 679, 682 (1985) ("A contract is an offer and acceptance supported by consideration." (citation omitted)). We have long held that "the promise of one person to pay the debt of another, though in writing, must be founded on a consideration to make it binding[.]" Syl. pt. 1, in part, *Winkler v. Chesapeake & Ohio R.R. Co.,* 12 W.Va. 699 (1878). Consideration is shown when the person promising to pay the debt is "benefited by the payment of said debt." *Winkler,* 12 W.Va. at 706.

We ruled in Syllabus point 3 of *Kanawha Banking and Trust Co. v. Gilbert,* 131 W.Va. 88, 46 S.E.2d 225 (1947), that

> [w]hen a written contract is clear and unambiguous its meaning and legal effect must be determined solely from its contents and it will be given full force and effect according to its plain terms and provisions. Extrinsic evidence of the parties to such contract, or of other persons, as to its meaning and effect will not be considered.

*See also* Syl. pt. 1, *Cotiga Dev. Co. v. United Fuel Gas Co.,* 147 W.Va. 484, 128 S.E.2d 626 (1962) ("A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent."). We further noted in Syllabus point 1 of *Gilbert* that

> [e]xtrinsic evidence of statements and declarations of the parties to an unambiguous written contract occurring contemporaneously with or prior to its execution is inadmissible to contradict, add to, detract from, vary or explain the terms of such contract, in the absence of a showing of illegality, fraud, duress, mistake or insufficiency of consideration.

131 W.Va. 88, 46 S.E.2d 225.

In view of the applicable law, we are troubled by the jury's verdict awarding judgment for Ms. Megginson on her counterclaim for breach of contract. Two dispositive issues form the basis of our concern.

First, if the contract in this case is viewed without extrinsic evidence, it is apparent that Capitol did not breach the contract. The Haggle–Free agreement states in clear terms that Capitol agreed to pay $2,064.00 as the balance owed on the Cavalier and that it was allowing Ms. Megginson $11,286.00 as credit on the trade-in of the Cavalier. The evidence was uncontradicted that Capitol, in fact, tendered a check to Huntington Banks in the amount of $2,064.00. The evidence also proved that Capitol gave to Ms. Megginson $11,286.00 as credit on her Cavalier. Thus, Capitol fulfilled this part of its obligation under the contract.

Another obligation undertaken by Capitol was that of timely filing the necessary documents for obtaining a valid motor vehicle licence plate and registration. The record is clear. Capitol breached that part of the contract which required the timely filing of such documents. In fact, the evidence indicated that Capitol delayed filing those necessary documents once Huntington Banks rejected Capitol's pay-off check of $2,064.00 and Ms. Megginson refused to pay the balance due on the Cavalier. Ms. Megginson contended that Capitol was required to pay any excess. However, the contract obligated Capitol to pay only $2,064.00 to Huntington Banks.

The delay by Capitol in filing the necessary documents in question was caused by Ms. Megginson's refusal to pay the balance of $7,019.25 owed to Huntington Banks. This Court noted in *Shrewsbery v. National Grange Mutual Ins. Co.* that " '[i]t is generally held that no liability for procuring a breach of contract exists where the breach is caused by the exercise of an absolute right[.]' " 183 W.Va. 322, 324, 395 S.E.2d 745, 747 (1990) (quoting *Williams v. Faircloth*, 259 Ga. 767, 769, 386 S.E.2d 151, 154 (1989)). *See also Elkins Manor Assoc. v. Eleanor Concrete Works, Inc.*, 183 W.Va. 501, 505, 396 S.E.2d 463, 467 (1990) ("Where time is of the essence in the performance of a contract, a delay in performance . . . unless caused by the other party or waived by such party, will constitute a breach of the contract[.]" (citations omitted)).

 A second concern we have with Ms. Megginson's recovery centers around the extrinsic evidence to the contract that was permitted by the trial court. The trial court permitted evidence indicating Ms. Megginson thought the $2,064.00 balance owed on the Cavalier referred to the amount she was obligated to pay after Capitol paid the remaining debt on the car. This extrinsic evidence was intended to explain away the plain and unambiguous meaning of "balance owed." The trial court also permitted evidence that indicated Capitol failed to confirm the balance owed on the Cavalier and assumed that the amount of $2,064.00 was the actual debt on the car. Our review of all the extrinsic evidence presented at trial leads this Court to the conclusion that a mutual mistake occurred in the formulation of the agreement between Capitol and Ms. Megginson. No document was presented showing Capitol agreed to pay more than $2,064.00 to Huntington Banks. No document existed showing Ms. Megginson was obligated to pay Capitol $2,064.00 as the remaining unpaid debt on the Cavalier. Our law is clear in holding that " 'one who enters into a contract or performs some act while laboring under a mistake of material fact is entitled to have the transaction or the act set aside in a court of equity.' " *Brannon v. Riffle*, 197 W.Va. 97, 101, 475 S.E.2d 97, 101 (1996) (quoting Syl. pt. 4, *Webb v. Webb*, 171 W.Va. 614, 301 S.E.2d 570 (1983)). Thus, "[w]here a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable[.]" Syl. pt. 2, in part, *McGinnis v. Cayton*, 173 W.Va. 102, 312 S.E.2d 765 (1984).

In the instant proceeding, the evidence on Ms. Megginson's counterclaim was sufficient for the jury to find a voidable contract, due to a mutual mistake, but was insufficient as a matter of law to find that Capitol breached the contract. "[T]he old equitable maxim *nemo ex suo delicto meliorem suam conditionem facere potest*, which we commonly state as no man should profit from his own wrong, but which literally means no one can make his condition better by his own misdeed, supports the conclusion we reach today." *Lakatos v. Estate of Billotti*, 203 W.Va. 553, 557, 509 S.E.2d 594, 598 (1998).

## IV.

## CONCLUSION

In view of the foregoing, we affirm the judgment refusing Capitol's fraud claim, and we reverse the judgment on Ms. Megginson's counterclaim for breach of contract.

Affirmed in part and Reversed in part.

STARCHER, Justice, concurring in part and dissenting in part:

(Filed July 20, 2000)

I concur with the majority's conclusion that the jury had the right to reject the car

dealer's fraud claim against the defendant. We must also apply this test to the jury's verdict for the defendant on the defendant's counter-claim, but the majority has failed to do so.

Specifically, we must assume that the jury believed that the car dealer deliberately "scammed" the defendant into a car purchase with phony financing promises. We must also assume that the jury entirely disbelieved the car dealer's "innocent" version of events.

Based on such findings, the jury could have found that the car dealer's improper conduct caused the defendant's original car to be repossessed, at a time that there was $16,000 owing on it—leaving the plaintiff to owe over $7,000 on it after repossession and resale.

To be deliberately scammed by a car dealer under these circumstances *is* worth $15,000. This jury verdict should stand. Accordingly, I dissent in part.